**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

| | |
|---|---|
| Troyce Allen Lewis,<br><br>　　　　　Petitioner,<br><br>v.<br><br>Warden M. Rios,<br><br>　　　　　Respondent. | Case No. 19-cv-1030 (SRN/ECW)<br><br><br>**REPORT AND RECOMMENDATION** |

　　　This case is before the Court on Troyce Allen Lewis's ("Petitioner" or "Lewis") Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241. (Dkt. 1.) The case has been referred to the undersigned United States Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons stated below, this Court recommends the Petition be dismissed without prejudice.

## I.　BACKGROUND AND THE FIRST STEP ACT

　　　Lewis was convicted in the United States District Court for the Northern District of Iowa and sentenced to prison. *United States v. Lewis*, 436 F.3d 939 (8th Cir. 2006); (Dkt. 6 ¶ 3 & Ex. A; Dkt. 7 ¶ 6 & Ex. B; Dkt. 1 at 1). Presently, Lewis is incarcerated at the Federal Prison Camp in Duluth, Minnesota on a 240-month term of imprisonment for two drug convictions. (Dkt. 6 ¶ 3; Dkt. 7 ¶ 6.) Under calculation methods in place at the time Lewis filed his petition, he was projected to be released on June 12, 2021 due to earned good conduct time. (Dkt. 6 ¶ 3; Dkt. 7 ¶ 6.)

The First Step Act of 2018, Pub. L. 115–391, 132 Stat. 5194 (2018), was enacted on December 21, 2018.  Relevant to one of Lewis's claims for relief, the First Step Act amended 18 U.S.C. § 3624. Pub. L. 115–391, § 102, 132 Stat. 5194, 5210.  Previously, 18 U.S.C. § 3624(b) read:

> [A] prisoner who is serving a term of imprisonment of more than 1 year other than a term of imprisonment for the duration of the prisoner's life, may receive credit toward the service of the prisoner's sentence, beyond the time served, of up to 54 days at the end of each year of the prisoner's term of imprisonment, beginning at the end of the first year of the term, subject to determination by the Bureau of Prisons that, during that year, the prisoner has displayed exemplary compliance with institutional disciplinary regulations.

18 U.S.C. § 3624(b)(1). Interpreting this previous statutory language, the BOP calculated the 54 days for each year of imprisonment served, not for the term of imprisonment imposed.  *See Barber v. Thomas*, 560 U.S. 474, 477-79 (2010) (explaining the BOP's calculation method).  Under that method—as upheld by the Supreme Court—prisoners effectively received 47 days of good time credit per year of imprisonment.  *See id.* at 479.

The First Step Act amended § 3624(b)(1) by striking ", beyond the time served, of up to 54 days at the end of each year of the prisoner's term of imprisonment, beginning at the end of the first year of the term," and inserting "of up to 54 days for each year of the prisoner's sentence imposed by the court . . . ."  Pub. L. 115–391, § 102(b), 132 Stat. 5194, 5210.  Thus, § 3624(b)(1) as amended by the First Step Act reads:

> [A] prisoner who is serving a term of imprisonment of more than 1 year other than a term of imprisonment for the duration of the prisoner's life, may receive credit toward the service of the prisoner's sentence, of up to 54 days for each year of the prisoner's sentence imposed by the court, subject to determination by the Bureau of Prisons that, during that year, the prisoner

2

has displayed exemplary compliance with institutional disciplinary regulations.

18 U.S.C. § 3624(b)(1) *as amended by* Pub. L. 115–391, § 102(b), 132 Stat. 5194, 5210.

The good conduct portion of the First Step Act was not immediately effective, however. Rather, the amendments "shall take effect beginning on the date that the Attorney General completes and releases the risk and needs assessment system . . . ." Pub. L. 115–391, § 102(b)(2), 132 Stat. 5194, 5213. The "risk and needs assessment system" must be completed "[n]ot later than 210 days after the date of enactment." Pub. L. 115–391, § 102(a), 132 Stat. 5194, 5196.

Relevant to Lewis's other claim, the First Step Act re-authorizes the BOP to conduct a home confinement pilot program for elderly offenders, initially enacted by the Second Chance Act of 2007. Pub. L. 115–391, § 603, 132 Stat. 5194, 5238–41; *see* 34 U.S.C. § 60541(g). That statute, as amended by the First Step Act, now reads:

> **(A) In general**
>
> The Attorney General shall conduct a pilot program to determine the effectiveness of removing eligible elderly offenders and eligible terminally ill offenders from Bureau of Prisons facilities and placing such offenders on home detention until the expiration of the prison term to which the offender was sentenced.
>
> **(B) Placement in home detention**
>
> In carrying out a pilot program as described in subparagraph (A), the Attorney General may release some or all eligible elderly offenders and eligible terminally ill offenders from Bureau of Prisons facilities to home detention, upon written request from either the Bureau of Prisons or an eligible elderly offender or eligible terminally ill offender.

> **(C) Waiver**
>
> The Attorney General is authorized to waive the requirements of section 3624 of Title 18 as necessary to provide for the release of some or all eligible elderly offenders and eligible terminally ill offenders from Bureau of Prisons facilities to home detention for the purposes of the pilot program under this subsection.

34 U.S.C. § 60541(g). To be eligible, an elderly offender must meet various criteria including (1) be at least 60 years of age; (2) not have been convicted of a crime of violence; and (3) have served two-thirds of their term of imprisonment. 34 U.S.C. § 60541(g)(5)(A).

Lewis filed the instant habeas petition challenging the delayed implementation of the First Step Act. (Dkt. 1 at 6-7.) Lewis argues that, as a 60-year-old inmate, he has served beyond the two-thirds of his sentence required to be eligible for elderly home confinement and should be immediately released under that program. (Dkt. 1 at 6-7.) Second, Lewis argues that the BOP has yet to award him good time credit withheld under its previous calculation method. (Dkt. 1 at 6-7.) Respondent indicates that it conducted a review but found Lewis ineligible for home confinement as an elderly offender due to a violent felony conviction. (Dkt. 5 at 7; Dkt. 7 ¶ 8.)

Because this matter was pending beyond July 19, 2019, the date the good conduct portion of the First Step Act became effective, the Court invited the parties to supplement the record. (Dkt. 9.) Respondent indicated that, as of August 29, 2019, it had not yet updated Lewis's sentence computation under the method dictated by the First Step Act. (Dkt. 10; Dkt. 11 ¶ 6.)

4

## II.   ANALYSIS

**A.   Exhaustion of Administrative Remedies**

There is no assertion by Lewis, or any evidence provided in the available record, indicating that he has exhausted his administrative remedies prior to bringing the present Petition. The BOP does not argue that the Petition should be denied due to a failure to exhaust administrative remedies.

Generally, federal prisoners must exhaust all available administrative remedies prior to seeking federal habeas corpus relief under 28 U.S.C. § 2241. *See United States v. Wilson*, 503 U.S. 329, 335 (1992); *see also Mathena v. United States*, 577 F.3d 943, 946 (8th Cir. 2009). However, because the concept of exhaustion for § 2241 petitions is judicially created and not mandated by statute, "sound judicial discretion governs." *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992) (citations omitted); *see also Lueth v. Beach*, 498 F.3d 795, 797 n.3 (8th Cir. 2007) (holding that failure to exhaust does not affect a court's ability to decide case where "the exhaustion prerequisite for filing a 28 U.S.C. § 2241 petition is judicially created, not jurisdictional.").

In analyzing "balanc[ing] the interests of the individual in retaining prompt access to a federal forum against countervailing institutional interests favoring exhaustion," courts have concluded that the exhaustion requirement may be excused due to time constraints or where proceeding through the administrative remedy process would undoubtedly be an exercise in futility that could serve no useful purpose. *McCarthy*, 503 U.S. at 146, 148; *see also See Elwood v. Jeter*, 386 F.3d 842, 844 n.1 (8th Cir. 2004) (exhaustion requirement waived based on government's concession that "continued use of

5

the [administrative] grievance procedure to contest the validity of the BOP's new policy would be futile.").

In this case, the balancing of interests favors having the issues raised by Lewis promptly decided over the institutional interests protected by the exhaustion requirement, especially in light of the fact that the BOP has established its position as it relates to the effective date of the First Step Act. Therefore, the Court waives the exhaustion requirement and reaches the merits of Lewis's claim.

**B.     Good Conduct Credit**

"[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992). "When the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'" *Id.* at 254 (quoting *Rubin v. United States*, 449 U.S. 424, 430 (1981)). Courts "must enforce plain and unambiguous statutory language according to its terms." *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 251 (2010).

"When a statute does not specify its effective date, and there is no clear congressional directive to the contrary, the statute takes effect on the date it is enacted." *United States v. Ways*, 832 F.3d 887, 893 (8th Cir. 2016) (citing *Johnson v. United States*, 529 U.S. 694, 702 (2000)). As noted above, the First Step Act is clear in that it was not immediately effective, but instead only took effect once the "Attorney General completes and releases the risk and needs assessment system . . . ." Pub. L. 115–391, § 102(b)(2), 132 Stat. 5194, 5213. The Attorney General had 210 days to complete the risk and needs

6

assessment system. Pub. L. 115–391, § 102(a), 132 Stat. 5194, 5196. Thus, the amendment to § 3624(b)(1) did not take effect until July 19, 2019. *Pizarro v. White*, 2019 WL 1922437, at *1 (M.D. Pa. Apr. 30, 2019); *Christopher v. Wilson*, 2019 WL 1745968, at *1 (N.D. Tex. Apr. 18, 2019); *Matthews v. Williams*, 2019 WL 1639776, at *2 (N.D. Ohio Apr. 16, 2019); *Roy v. United States Bureau of Prisons*, 2019 WL 1441622, at *1 (E.D. Wash. Apr. 1, 2019). Because the amendments to § 3624(b)(1) were not in effect when Lewis filed his petition, the BOP had no statutory authority to recalculate his good time credit until the relevant provision of the First Step Act. *Christopher*, 2019 WL 1745968, at *2; *Matthews*, 2019 WL 1639776, at *2; *Roy*, 2019 WL 1441622, at *2. As such, Lewis's habeas petition was premature in this respect. *Pizarro*, 2019 WL 1922437, at *1; *Christopher*, 2019 WL 1745968, at *2; *Matthews*, 2019 WL 1639776, at *2; *Roy*, 2019 WL 1441622, at *2.

The BOP has since completed the required risk and needs assessment system giving it the tools necessary to recalculate all prisoners' release dates. (*See* Dkt. 9; Dkt. 10 at 1). This means Lewis' argument is now timely. *See Kieffer v. Rios*, Case No. 19-cv-899 (PJS/SER), 2019 WL 3986260, at *1 n.1 (D. Minn. Aug. 23, 2019). The BOP has not fully completed its Congressionally mandated duty, however, citing an inability to mass update prisoners' sentence computations. (Dkt. 10 at 3.) The BOP is working through a "significant administrative burden" by processing approximately 5,000 sentence computations per month with over 100,000 remaining as of August 29, 2019. (Dkt. 10 at 3.)

7

This Court need not decide the larger issue of whether the BOP is complying with the First Step Act by failing to promptly recompute inmates' sentences because there is no violation specifically as to Lewis. Lewis has a (now outdated) projected release date of June 12, 2021 via earned good conduct time. (Dkt. 6-1 at 4.) This was based on the BOP's calculation that he was projected to earn a total of 881 days (and had earned 783 days) as of January 30, 2019, assuming he had qualified for the full good conduct award) and a full term expiration of November 10, 2023.[1] (*Id.*) Under the First Step Act method, Lewis could earn up to 1080 days of good conduct time. Thus, Lewis's updated release date (assuming a full award of good conduct time) should be approximately November 25, 2020. *See Granados v. Marques*, Case No. 19-cv-837 (ECT/ECW), 2019 WL 4025034, at *2 (D. Minn. Aug. 27, 2019) (confirming the BOP's recalculation of inmate's sentence). Provided that the BOP updates Lewis's sentence computation with sufficient time to ensure he is timely released as required under the First Step Act, there can be no habeas relief as he would not be held in violation of the laws of the United States. 28 U.S.C. § 2241(c)(3) (a "writ of habeas corpus shall not extend to a prisoner unless . . . [h]e is in custody in violation of the Constitution or laws or treaties of the United States."). Accordingly, the Court recommends dismissing this claim without prejudice.

---

[1] Lewis received 535 days of prior credit time for November 11, 2003 to April 28, 2005 (the day before his sentence was imposed). (Dkt. 6-1 at 3-4.)

8

## C.   Elderly Home Detention

The plain reading of 34 U.S.C. § 60541(g) shows it creates a pilot project and gives the Attorney General the discretion to designate which institutions will participate. *United States v. Egan*, 2019 WL 1552266, at *1 (S.D.N.Y. Apr. 10, 2019) (citing *Xiao v. La Tuna Fed. Corr. Inst.*, 2019 WL 1472889, at *3 (W.D. Tex. Apr. 3, 2019)).  "This discretion is consistent with the Attorney General's—and by extension the Bureau of Prisons'—long-standing unfettered discretion over where to house prisoners." *Egan*, 2019 WL 1552266, at *1; *Deffenbaugh v. Sullivan*, 2019 WL 1779573, at *1 (E.D.N.C. Apr. 23, 2019); 18 U.S.C. § 3621(b).

The federal courts, including this District, that have considered the recently amended 34 U.S.C. § 60541(g) have found a district court has no power to use it to grant a prisoner early release to home detention. *Dudgeon v. Rios*, Case No. 19-cv-1489 (SRN/DTS), 2019 WL 5418192, at *1 (D. Minn. Oct. 23, 2019) (noting that "discretion about placement in the Elderly Offender Program lies with the Attorney General and the BOP"); *Hansen v. Rios*, Case No. 19-cv-374 (JRT/TNL), 2019 WL 4544205, at *2-*3 (D. Minn. Sept. 19, 2019); *Marshall v. English*, 2019 WL 3252742, at *3 (D. Kan. July 19, 2019); *Chase v. Rios*, Case No. 19-cv-345 (NEB/SER), 2019 WL 2997054, at *2 (D. Minn. June 5, 2019), *report and recommendation adopted* 2019 WL 2994469 (D. Minn. July 9, 2019); *Deffenbaugh*, 2019 WL 1779573, at *1; *Egan*, 2019 WL 1552266, at *1; *Xiao*, 2019 WL 1472889, at *3 (declining to grant a request for home detention under 34 U.S.C. § 60541); *United States v. Clark*, 2019 WL 1052020, at *3 (W.D.N.C. Mar. 5, 2019) (holding that courts cannot order home imprisonment for eligible elderly offenders

9

under 34 U.S.C. § 60541 because "the method of incarceration . . . is determined solely by the Bureau of Prisons"); *United States v. Perez-Asencio*, 2019 WL 626175, at *4 (S.D. Cal. Feb. 14, 2019) (34 U.S.C. § 60541 "only authorizes the Attorney General, not the courts, to modify the method of imprisonment from a [Bureau of Prisons] facility to home confinement."); *United States v. Curry*, 2019 WL 508067, at *2 (E.D. Ky. Feb. 8, 2019) ("34 U.S.C. § 60541 only authorizes the Attorney General to modify the method of imprisonment. It does not permit the Courts to take such action."); *Burg v. Nicklin*, 2019 WL 369153, at *2-3 (W.D. Tex. Jan. 29, 2019) (noting that the BOP retains exclusive authority and discretion to designate the place of an inmate's confinement); *see United States v. Burkhart*, 2019 WL 615354, at *1 n.1 (E.D. Ky. Feb. 13, 2019) (noting it would not be within the court's authority to grant release where the BOP retains decision-making authority under 34 U.S.C. § 60541).

This Court likewise concludes it has no authority under 34 U.S.C. § 60541(g) to order that Lewis's eligibility as an elderly offender be re-determined or that he serve the remainder of his sentence in home detention. Thus, Lewis's petition should be denied on this claim.

### III.   RECOMMENDATION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Lewis's Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241 (Dkt. 1) be **DISMISSED WITHOUT PREJUDICE**; and

2. Lewis's Petition to File and Proceed in Forma Pauperis (Dkt. 2) be

**DENIED AS MOOT**.

DATED: January 13, 2020                    *s/Elizabeth Cowan Wright*
                                           ELIZABETH COWAN WRIGHT
                                           United States Magistrate Judge

## NOTICE

**Filings Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).